The last case this afternoon is number 5-18-0007, People v. Bell. Arguing for the appellant Edna Bell is Julie Thompson. Arguing for the appellee, People of the State of Illinois, is Michael Lennox. Each side will have up to 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will hit the gavel. Please remember only the clerk is permitted to record these proceedings. Good afternoon, counsel. Good afternoon. Good afternoon. This is 5-18-0007. Ms. Thompson, are you ready to proceed? We are ready, your honor. Please go right ahead. Thank you. My name is Julie Thompson. I work for the Office of the State Appellate Defender, and I am here today representing Edna Bell. We are seeking reversal of a DUI misdemeanor conviction. Ms. Bell was arrested and charged with driving under the influence of alcohol. At her jury trial, the trial court committed error in questioning the jurors under the Zare case. Trial court failed to ask the jurors whether they understood the Zare questions that were being asked. Ms. Thompson, the state conceded that, as I understand it? They do, your honor, and that was going to be my next sentence, that the state has conceded that issue. The question then becomes whether or not the evidence in this case was closely balanced. This was not an issue that was preserved at trial by trial counsel. So, in determining whether the evidence is closely balanced, the court looks to whether it was a contest of credibility. And here, in fact, it was a credibility contest. The evidence at trial was the testimony of the arresting police officer and the results of a breathalyzer test, BAC test results. What did she blow? I'm sorry, your honor? What did she blow? The results were .164 of the breathalyzer. However, Judge, there are concerns raised with regard to that breathalyzer, the validity of those test results, and that leads into the second issue that we raised in our brief, which does go to the closely balanced evidence. Ms. Bell requested the appointment of an expert from the trial court, and that expert request was denied. Because the expert request was denied, Ms. Bell was unable to refute the validity of the breathalyzer results at her trial. The breathalyzer results were contested because Ms. Bell suffers from a condition called GERD, gastroesophageal reflux disease, causes the contents of the stomach to enter the back of the throat, and is a known interfering substance for validity of breathalyzer results. There is an Illinois Supreme Court decision, People v. Bonnuti, in which a defendant who also suffered from GERD raised that issue to the trial court first as a, in a summary suspension motion. And the trial court heard only the testimony of the defendant as to his condition, and denied the summary suspension motion. Can I, could you back up one more? When the expert was denied, that was, she was not going to present an expert. She wanted the state to pay for an expert? Yes, sir. She wanted the, she was seeking expert funds from the court to pay for an expert, yes. Okay. So, in Bonnuti, after the court heard the testimony of the defendant and denied a summary suspension, defense counsel filed a motion to suppress the breathalyzer results, and brought in the defendant's treating physician, who testified as an expert that GERD is, will interfere with the validity of breathalyzer test results. Anything that enters the mouth during that 20 minute waiting period potentially is going to interfere with the validity of breathalyzer test results. When you talk about entering the mouth, you mean from either direction? Either direction, your honor, yes. Back up from the stomach, yes. And so, the, the trial court, in the suppression motion in the Bonnuti case, actually granted the suppression, and the state appealed the suppression. And in upholding the suppression, the Illinois Supreme Court said that what matters is the validity of these test results. We, in order for these to be reliable, they have to be credible. We have to be able to know that these results are legitimate. And in the Bonnuti case, because there was question as to the legitimacy of those results, the suppression was proper. Here- How far away was the officer from the, from the defendant during this 20 minute period? Usually they're, they're in the same room, is what the testimony was here in the record, your honor. They've, they normally are sitting at a table face to face, actually. Although the record was not that specific here. But they were in the same room during that 20 minute waiting period. The officer testified in our case that he asked Miss Bell to show him if she had anything in her mouth. And she opened her mouth and showed him there was, he said no foreign objects there. He waited the 20 minutes and they did the test. Miss Bell's testimony was that during that 20 minutes, she was suffering from the effects of GERD, but there is no outward indication of that. The testimony in the Bonnuti case was similar. There is not necessarily an outward indication, a sign that someone would know that an individual was suffering from this condition. So the trial court pointed to a Doyle versus Russell and denied the request for expert funding for Miss Bell. Because of that, she was not able to effectively challenge the results of the breathalyzer test at trial. The other issue, the third issue that we have raised in our brief is that during the cross examination of Miss Bell, that the state actually violated Doyle versus Ohio. During Miss Bell's testimony, she testified as to what her condition was, what her medical condition was. During the state's cross examination of Miss Bell, she was asked whether at any point in time she had offered to the officer the information, the medical information that she suffered from GERD. She said that she had not. During closing argument and rebuttal argument, the state argued that Miss Bell had recently fabricated GERD as a defense to the DUI charge. It's a clear direct violation of Doyle versus Ohio for the state to inquire and attempt to impeach a defendant with evidence of post Miranda silence, which is what they did here. They essentially put her in a position of being forced to offer an explanation to the police officer about her medical condition, and her failure to do so was used against her by the state during argument. For all of these reasons, we are asking the court to reverse the conviction, find that the evidence here was closely balanced, and order the case remanded for a new trial. Thank you, counsel. Mr. Lennox, are you prepared to proceed? Yes, your honor. Then go right ahead. Opposing counsel, your honors, and may it please the court. My name is Michael Lennox, and I represent the state in this matter. This court should affirm the evidence was not closely balanced such to satisfy a first-pronged plain error analysis. Two, the trial court did not abuse its discretion when it did not appoint an expert witness in a misdemeanor case. And three, the state's comments on the defendant's post Miranda silence were properly made for impeachment purposes or alternatively were harmless error. In reference to the first point, your honors, the defendant did not object at trial, and therefore this issue must be reviewed under the plain error doctrine. The defendant seeks first-pronged plain error review, which requires a clear and obvious error occur, and the evidence be so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error. The state concedes, as your honor stated, that there is clear precedent from People versus Belknap that a failure to ask jurors whether they understand the Zare principles is erroneous, so the question then becomes whether the evidence in this case is closely balanced or explained another way if the error is prejudicial. This court stated in People versus Mueller, while citing to Belknap, that a reviewing court must make a common-sense analysis of all the evidence in context and the assessment must be qualitative and take into account the totality of the circumstances when determining if the evidence is closely balanced. This court emphasized in People versus Mueller that the evidence must not only be closely balanced, but must be so of justice against the defendant. Finally, the Supreme Court provides precedent in People versus Sutherland and People versus Naylor that the weight to be given to witnesses' testimony, the credibility of witnesses, resolution of inconsistencies and conflicts in the evidence, and the reasonable inferences to be drawn from the testimony are the responsibility of the trier fact and a credibility contest exists where the evidence in a case boils down to the testimony of witnesses that provide alternate versions of events and no additional evidence is introduced to contradict or corroborate either version of events. In this case, a breathalyzer test was taken with a blood alcohol content reading of 0.164 as opposing counsel stated, which is more than twice the legal limit. By definition, this is not a Naylor credibility contest because the breathalyzer test is a clear corroboration of the officer's testimony. The defendant suggests that the breathalyzer test was invalid, which leads into the second issue, but before we move there, that determination was decided by the trier fact and Naylor's credibility contest is not no additional evidence that both sides agree is valid, dispositive and damning. No, the credibility contest language is no additional evidence is introduced to contradict or corroborate either version of events. Therefore, since there is corroborating evidence on behalf of the state, the defendant's first prong, plenary analysis fails. In reference to the second issue, the court refused a trial court's denial of a motion for an expert witness for an abuse of discretion standard and an abuse of discretion only occurs where no reasonable person would take the view adopted by the trial court. In People v. Russell, which opposing counsel referenced, the third district appellate court reviewed a case in which the lower court did not appoint expert witness for an indigent defendant in a misdemeanor DUI case. The Russell court stated that there was no authority that existed for an expert witness to be appointed in a misdemeanor case and the court found the trial court did not abuse its discretion in denying the appointment. The defendant made the best argument against this issue in her brief when stating on page 25 of her brief that the trial court was bound to follow Russell. The trial court simply could not have abused its discretion if it was following Binding President. If the standard of... As I understand it, she is asking this court to disagree with this. Yes, your honor, but in terms of the trial court following Binding President, which she states in her brief, they simply could not have abused their discretion by following Binding President. If the standard were to be de novo instead on this issue, the policy argument that the defendant asserts might be warranted, but without any citation to authority showing how the trial court allegedly abused its discretion, the defendant's argument fails. As for the issues... As for the, quote, issues with the validity of the breathalyzer test, unquote, that the defendant asserts are presented, while the defendant may have testified that she drank a shot of alcohol and was experiencing acid reflux when she took the breathalyzer test, the entirety of the record, save for her own testimony, disagrees with her. In the secured common law record on page five, the defendant reports that she had consumed a pint of bourbon that day. On pages 64, 67, and 68 of the record, the defendant... When does she say that she drank it? She said that she drank it that day. I believe it was four hours prior is what she said at that point in the record. On pages 64, 67, and 68 of the record, the defendant stated from memory that the breathalyzer test was administered to her in her van, which factually did not happen. Yet she also claims to remember the exact time she experienced her chronic acid reflux condition, which coincidentally coincided with the breathalyzer test. Where was she stopped? I believe she pulled into her own residence after... The stop was continued on to her residence, pulled in, and that's where the... So she was almost home when she got caught? Yes, your honor. How far from home was she? I'm not sure if it's clear in the record, but from my understanding, it was like one or two stop signs away. But the arresting officer in the record also states that he thought that she was trying to take off on him. That was his direct language. On page 235 of the record, the arresting officer notes the defendant was driving erratically. On pages 168 and 196, the arresting officer testifies the defendant had glassy red eyes. Her breath smelled of alcohol. She had delayed responses and slurred speech when she was pulled over. On pages 196 through 197, the arresting officer testified the defendant told him she had been drinking. On page 208, the arresting officer testified that he had the defendant perform in three field sobriety tests, and the defendant gave the maximum number of indicators of intoxication on all three field sobriety tests. On page 187, the officer testified that the breathalyzer test itself has a fail safe that will cancel the test if mouth alcohol is detected and provide an error reading. On page 210 and 211, the officer testified that he observed the defendant for 20 minutes, and he did not observe her burp, belch, vomit, or throw up. Her mouth was also inspected to see if anything foreign was present, and she also verbally confirmed that there was nothing in her mouth. And on page 212, the officer testifies that the test did not result in an error, and that lack of error can also be seen in the state's exhibit three. In reference to my last issue, however, your honors, a defendant's post-arrest silence cannot be used, as opposing counsel stated, to impeach the defendant's trial testimony or otherwise create an inference of guilt. However, there are two exceptions to the rule. A defendant's post-arrest silence may be used for impeachment purposes when the defendant testifies at trial that she gave an exculpatory statement to police when arrested, or if the defendant made a prior inconsistent statement after arrest. And your that she was burping and that there was stuff in her mouth. And the state's inquiry did not refer to the defendant's right to remain silent. Rather, the state asked the defendant why, if her testimony were true, did she not tell the officers that something was in her mouth. And for those reasons, we would ask you affirm. Thank you, your honors. Thank you, counsel. Ms. Thompson, rebuttal? Briefly, your honor. Thank you. Just a couple of points, the list of factual references that counsel made. The stop, my understanding is, occurred approximately to the original stop of Ms. Bell, occurred about two blocks away from her home. The officer's testimony was that he followed her, she pulled into her parking lot. He also testified that that happens frequently because people don't like to stop on the side of the road at night, it's dangerous. So I don't think we can impugn any evil motive to Ms. Bell because she pulled into her parking lot. The other thing that counsel pointed out was the failure of the field sobriety test. The testimony at trial by the police officer was, yes, that she had failed some field sobriety tests. He also testified that those tests, excuse me, those tests mean nothing other than probable cause for an arrest. They're not proof of guilt. I think what's most significant here is the court's failure, the trial court's failure to provide Ms. Bell with the expert witness funds that she needed to refute the validity of the breathalyzer test. In the Russell decision, a third district decision, is the only case that says that a trial court should not grant an expert witness fees for a misdemeanant. The Russell case is factually significantly different than our case. In the Russell case, the state had an expert who was going to testify as to the breathalyzer machine. So the defense asked for an expert. The only reason that the defense gave for needing an expert is because, well, the state had one, so they wanted one. Trial court said no. Appellate court said the trial court did not abuse its discretion under those circumstances. In our case, Ms. Bell is not asking for expert witness fees because the state had an expert or because she has no better reason. Ms. Bell is looking at the Bonudi decision with a defendant who has the exact same physical condition that she has, who obtained an expert, who testified for the breast. The only difference here is money. Ms. Bell could not bring her private physician to court for her. Counsel, let me ask a question. If you have GERD and you don't belch, then that won't affect the breath slider. Is that correct? Your Honor, my understanding is when a person belches, their mouth actually opens. You can burp without your mouth. If you do it without your mouth opening, I believe you can. As long as there's nothing in your mouth that won't affect the breath slider, is that not true? If the stomach contents come up through the back of the throat, then yes, they could affect the contents of the breath slider. That's only if something comes up. Right. If something were to come up. A doctor testifying that you have GERD does not say that the breath slider is not true, right? No, Your Honor. It's not a perfect defense. Well, no defense is perfect, obviously. It puts those two pieces together. The fact that she has GERD and can testify to GERD does not attack the validity of those test results. In the Bonudi decision, the Supreme Court said they needed that expert to make the connection between the condition and the invalid test results. That's why the difference here is Ms. Bell just didn't have the money to bring her private physician, although the record does indicate that she'd been treated for seven or eight years for this condition. This wasn't something new that she had just recently developed. If you have that condition, you're told not to drink, is that true? I don't know the answer to that, I'm sorry. What I'm getting at, without anything in your throat or in your mouth, and if you say, I don't know GERD, if you always get something if you belch, because he did testify, didn't he, that there was no belching, heard no burping or anything like that, is that correct? He testified he saw no outward signs, Your Honor. Yes, he did say that. So, her position is simply that the expert was necessary to make that connection between the illness and the validity of those test results, and without those funds, Ms. Bell was not able to present an adequate defense. So, for these reasons, Your Honors, we would ask the courts to reverse and remand for a new trial. Thank you. Well, thank you, counsel. Obviously, we will take the matter under advisement and we'll issue a disposition in due course. Thank you all, have a great afternoon, have a great holiday. Yes, thank you, Your Honors.